UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re:

BEACON AT BRICKELL VILLAGE, LLC,            Chapter 7 Case
                                            Case No. 13-11961-LMI
    Debtor.
_____/

In re

BEACON DEVELOPER   PARTNERS, LLC,           Chapter 7 Case
                                            Case No. 13-23470-LMI
    Debtor.
_____/

**TRUSTEES' JOINT MOTION FOR AUTHORITY TO SELL CERTAIN LITIGATION CLAIMS PURSUANT TO 11 U.S.C. § 363**

Drew M. Dillworth, court-appointed trustee ("Trustee Dillworth") for the chapter 7 estate of Beacon At Brickell Village, LLC ("BBV"), and Joel L. Tabas, court-appointed trustee ("Trustee Tabas," and collectively with Trustee Dillworth, the "Trustees") for the chapter 7 estate of Beacon Developer Partners, LLC ("BDP," and collectively with BBV, the "Debtors"), by their respective undersigned counsel, pursuant to 11 U.S.C. § 363(b) and (f), move for entry of an order authorizing the sale of certain litigation claims (the "Property") identified in the Asset Purchase Agreement, attached hereto as **Exhibit A** (the "APA"), free and clear of all liens, claims and encumbrances, and in support thereof state:

**Jurisdiction**

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N), and (O).

2. The statutory predicates for the relief sought herein are 11 U.S.C. §§ 363(b) and (f).

**Background**

3. On January 29, 2013, BBV, through Renzo Renzi, filed a chapter 7 case, Case No. 13-11961-LMI. Trustee Dillworth is the acting chapter 7 Trustee for BBV. BBV's principal asset is an ownership interest in real property located at the intersection of 30 SE 8th Street and South Miami Avenue in Miami, Florida 33131, which are three of four parcels of real property (the "BBV Parcels").

4. On June 6, 2013, BDP, through Renzo Renzi, filed a chapter 7 case, Case No. 13-23470-LMI, subsequently assigned to this Court. Trustee Tabas is the acting chapter 7 Trustee for BDP. BDP owns the fourth parcel of real property (the "BDP Parcel").

5. As part of their efforts to monetize the BBV and BDP Parcels the Trustees originally entered into a letter of intent with Crystal Tower Partners II, LLC ("Crystal"), with a purchase price of $19.5 million.

6. Ultimately, the BBV and BDP Parcels were eventually sold to a different company, Watson Investigations LLC, for a purchase price of $21.5 million.

7. The Trustees have been investigating claims against various parties related to Crystal letter of intent pursuant to, *inter alia*, 11 U.S.C. §363(n).

8. After consultation with significant creditors in the BBV and BDP cases and in order to effectively and promptly administer their respective estates, the Trustees have opted to sell whatever rights and claims and all of each estate's right, title, and interest in any claims pursuant to 11 U.S.C. §363(n) or otherwise relating to Crystal's offer to purchase the BBV and BDP Parcels, as is, where is, without representations or warranties.

**Relief Requested**

9. The Trustees believe that it is in the best interest of creditors of the Debtors' chapter 7 estates, to permit the sale of the Property to JAWHBS LLC (the "Buyer") for $25,000, subject to higher and better offers. Accordingly, the Trustees respectfully request a hearing for the Court to consider entry of an order, in the proposed substantial form attached as **Exhibit B**, (the "Sale Order") approving the sale of the Property free and clear of all liens, claims and encumbrances, with such liens, claims and encumbrances, if valid, to attach to the sale proceeds.

**Form and Manner of Notice of Sale**

10. Pursuant to Bankruptcy Rule 6004(a), notice of the proposed sale of property outside the ordinary course of business is to be provided in accordance with Bankruptcy Rule 2002(a)(2), (c)(1), and (k). These provisions of Bankruptcy Rule 2002 provide, in part, that all creditors are to receive at least 21 days' notice of a sale of estate assets outside the ordinary course of business, unless the court, for cause, shortens the time or directs another method of giving notice. Fed. R. Bankr. P. 2002(a)(2). Relevant here, Bankruptcy Rule 2002(c)(1) provides that the notice of the proposed sale of assets is to include a general description of the assets, and the time fixed for filing objections. Fed. R. Bankr. P. 2002(c)(1).

11. The Trustees are providing notice of this Motion and the proposed sale of the Property to all creditors listed on the schedules filed with the Court in BBV and BDP cases, all persons and entities on the master mailing matrix and which have requested notice in these chapter 7 cases.

12. The Trustee's request that the Court approve the following Overbid Terms and Procedures:

> a. To overbid, an interested party must submit an offer ("Overbid") in writing to be received by the Trustees care of their respective attorneys of record Brian Rich, Esq., brich@bergersingerman.com and Gary Freedman, gfreedman@tabasfreedman.com, by no later than 5 days prior to the hearing on

  this Motion. If the Trustees receive an offer, an auction will be held one (1) business day before the hearing on this Motion.

 b. Each Overbid must be accompanied by a deposit in the form of Good Funds (as defined in the APA) in the amount of $10,000 toward the Purchase Price and the intitial overbid shall be in the amount of $35,000.00, with all overbids to be made in increments of $5,000 or other such amount as determined by the Trustees in their sole discretion.

 c. Any person who submits an Overbid must seek to acquire the Purchased Assets (as defined in the APA) on terms and conditions not less favorable to the Estates than the terms and conditions in the APA under which the Buyer has agreed to purchase the Purchased Assets, including all cash consideration.

## Authority for Relief

13. Property of the estate may be sold outside the ordinary course of business. Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate…." 11 U.S.C. § 363(b)(1). Courts have held that transactions should be approved under section Code 363(b)(1) when: (a) they are supported by the sound business judgment of a bankruptcy trustee; (b) interested parties are provided with adequate and reasonable notice; (c) the sale price is fair and reasonable; and (d) the purchaser is acting in good faith. *See In re Delaware & Hudson Ry. Co.*, 124 B.R. 169 (D. Del. 1991); *In re Phoenix Steel Corp.*, 82 B.R. 334, 335-36 (D. Del. 1987). Here, each of these factors is met.[1]

14. The Trustees, in the sound exercise of their business judgment, have concluded that the purchase price of $25,000 to be paid by the Buyer pursuant to the terms and conditions of the APA and as set forth herein, presents the best option for maximizing the value of the Property for the benefit of the Debtors' estates and to quickly and efficiently close the bankruptcy cases.

---

[1] The Trustees are not requesting relief pursuant to 11 U.S.C. §363(f) because the claims and causes of action being sold accrued post-petition and therefore are free of any claims or liens. However, if that is incorrect the Trustees request that the sale be free and clear of all liens, claims and encumbrances with any such valid liens, claims and encumbrances to attach to the proceeds of sale pursuant to 363(f).

There is no reason to believe that the Buyer acting at arms-length is acting in anything but good faith.

15. In other cases bankruptcy trustees have been permitted to sell lawsuits and/or causes of action. *See In re Stokes*, 2013 WL 492477 (Bankr. D. Mont. Feb. 8, 2013). In *In re Moore*, 608 F.3d 253 (5th Cir. 2010), the Fifth Circuit approved the sale of causes of action owned by a bankruptcy trustee pursuant to 11 U.S.C. §544(b). Similarly, , the Trustees request that the Court authorize the sale of the Property in this case.

**WHEREFORE**, the Trustees respectfully request entry of an Order: (i) approving the over bid procedures as noted in this Motion and the APA; (ii) authorizing the sale of the Property to the Buyer or its assignee pursuant to the terms of the APA free and clear of all liens, claims, and encumbrances; and (iii) granting such other and further relief as may be just and proper.

Respectfully submitted,

| | |
|---|---|
| BERGER SINGERMAN LLP<br>Attorneys for Trustee Dillworth<br>125 S. Gadsden Street, Ste. 300<br>Tallahassee, FL 32230<br>Telephone: (850) 561-3010<br>Facsimile: (850) 561-3013<br><br>By: */s/ Brian G. Rich*<br>    Brian G. Rich<br>    Florida Bar No.: 0038229<br>    brich@bergersingerman.com | TABAS, FREEDMAN& SOLOFF, P.A.<br>Attorneys for Trustee Tabas<br>14 NE 1st Ave., PH<br>Miami, FL 33132<br>Telephone: (305) 375-8171<br>Facsimile: (305) 381-7708<br><br>By: */s/ Gary M. Freedman*<br>    Gary M. Freedman<br>    Florida Bar No.: 727260<br>    gfreedman@tabasfreedman.com |

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served on the 27th day of March, 2015, by electronic transmission through the Court's CM/ECF system or via U.S. Regular Mail, if not already served electronically, as indicated, upon all parties on the attached Service List.

>  /s/ Brian G. Rich_____
>  Brian G. Rich

**Electronic Mail Notice List**

The following is the list of **parties** who are currently on the list to receive email notice/service for this case.

- Melissa Alagna    mma@segallgordich.com, jxp@segallgordich.com
- Jeffrey S. Berlowitz    jberlowitz@srhl-law.com, sjohnson@srhl-law.com
- Ileana Cruz    cao.bkc@miamidade.gov
- Joseph A. DeMaria    jdemaria@foxrothschild.com, mmiller-hayle@foxrothschild.com
- Adrian C. Delancy    adelancy@mrthlaw.com, ycandia@mrthlaw.com,gruiz@mrthlaw.com,ecfnotices@mrthlaw.com;mrthbkc@gmail.com
- John B. Hutton III    huttonj@gtlaw.com, mialitdock@gtlaw.com;miaecfbky@gtlaw.com
- Harris J. Koroglu    hkoroglu@shutts.com, jgoodwin@shutts.com
- David J Lazarovic    david@lazarovic.com
- Robert C Meyer    meyerrobertc@cs.com, rcmpapl@gmail.com;rcmeyer@gmail.com;assistantrcmpa@gmail.com
- Ari Newman    newmanar@gtlaw.com, crossmann@gtlaw.com;mialitdock@gtlaw.com;miaecfbky@gtlaw.com
- Cassy E O'Donnell    codonnell@tabasfreedman.com, jcepero@tabasfreedman.com
- Office of the US Trustee    USTPRegion21.MM.ECF@usdoj.gov
- Tomas A Pila    pilalaw@bellsouth.net
- Brian G Rich    brich@bergersingerman.com, efile@bergersingerman.com;bwalter@bergersingerman.com;efile@ecf.inforuptcy.com
- Peter D Spindel    peterspindel@gmail.com, peterspindelcmecf@gmail.com
- Joel L Tabas    jtabas@tabasfreedman.com, jcepero@tabasfreedman.com;kborrego@tabasfreedman.com
- Joel L Tabas    JLT@tfsmlaw.com, kborrego@tabasfreedman.com;jtabas@ecf.epiqsystems.com
- Charles M Tatelbaum    cmt@trippscott.com, lxc@trippscott.com;jlr@trippscott.com;cvp@trippscott.com
- David S Turken    dturken@tewlaw.com

# EXHIBIT "A"

## ASSET PURCHASE AGREEMENT

THIS ASSET PURCHASE AGREEMENT ("Agreement") is made and entered into March 5, 2015, by and between and JAWHBS LLC, or its assignee ("Buyer") and Drew M. Dillworth, solely in his capacity as the Chapter 7 Trustee ("Trustee Dillworth") for the bankruptcy estate of ("BBV Estate") of Beacon at Brickell Village, LLC (the "BBV Debtor"), Case No. 13-11961-LMI (the "BBV Case") and Joel L. Tabas, solely in his capacity as the Chapter 7 Trustee ("Trustee Tabas") for the bankruptcy estate of ("BDP Esate")Beacon Developer Partners, LLC (the "BDP Debtor"), Case no. 13-23470-LMI (the "BDP Case" and collectively with the BBV Case, the "BK Cases"). Trustee Dillworth and Trustee Tabas (collectively, the "Trustees" or "Sellers") and Buyer are collectively referred to herein as the "Parties" or individually as a "Party".

## RECITALS

a. On January 29, 2013 ("BBV Petition Date") the BBV Case was commenced upon the filing of a voluntary petition for relief under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code"). On June 6, 2013 ("BDP Petition Date" and collectively with the BBV Petition Date, the "Petition Date") the BDP Case was commenced upon the filing of a voluntary petition for relief under chapter 7 of the Bankruptcy Code.
b. The Trustees are the duly appointed, qualified and acting Chapter 7 Trustee for their respective Estates.
c. On the Petition Date the Estates owned certain real property in Miami-Dade County (the "Property").
d. The Trustees sold the Property in the course of their administration of the BBV and BDP Cases.
e. As part of their efforts to sell the Property the Trustees originally entered into a letter of intent with Crystal Tower Partners II, LLC ("Crystal"), calling for a purchase price of $19.5 million (the "Crystal Offer").
f. The sale to Crystal was not approved after Crystal withdrew its offer in open Court on July 10, 2013.
g. The Property was subsequently sold to Watson Investigations, LLC for a purchase price of $21.5 million.
h. The Trustees have been investigating claims against various parties related to the Crystal Offer pursuant to, *inter alia*, 11 U.S.C. § 363(n) ("363(n)").
i. After consultation with the significant creditors in the BBV and BDP Cases, and in order the effectively and promptly administer the Estates the Trustees have opted to sell whatever rights and claims and all of the Estates' right title and interest in any claims pursuant to 363(n) or otherwise relating to the Crystal Offer (the "Claims"), as is, where is, without representations or warranties.

6245261-3

In consideration of the mutual covenants, promises, agreements, representations, and warranties contained in this Agreement, the parties hereto do hereby covenant, promise, agree, represent and warrant as follows:

1. Recitals: The foregoing Recitals are true and correct and incorporated herein.
2. Purchase and Sale of Assets: Subject to the terms and conditions of this Agreement, on the Closing Date, **as is, where is, with no warranties or representations whatsoever**, Trustees shall sell, assign transfer, convey and deliver to Buyer, and Buyer shall purchase, acquire and accept from the Sellers, all of Sellers' right, title and interest in the Claims as of the Closing Date.
3. Purchased Assets: All claims the Estates may have arising out the circumstances of the sale of the property known as 18 Southeast 8th St, 30 Southeast 8th St, 830 Southeast First Ave., Miami, Florida 33131, including and without limitation, any claims against any individuals for violating any provisions of the United States Code, tortious interference, bid rigging, or collusion or attempted collusion. Any and all documents and correspondence in Seller's possession relating to any cause of action described in this paragraph, including without limitation, any discovery, research memo's and analysis of such claims, but excluding any documents protected by the attorney-client privilege or work-product doctrine.
4. Purchase Price: the purchase price for the Purchased Assets shall be $25,000.00 ("Purchase Price"). The Purchase Price shall be paid in cash or other immediately available funds ("Good Funds") on the date fifteen (15) calendar days after the date the Bankruptcy Court in the BK Cases has approved this Agreement by Final Order ("Effective Date"). The term "Final Order" means an order or judgment of the Bankruptcy Court that has not been revered, stayed, modified, amended and as to which: (a) the time to appeal, move for rehearing/reargument has expired and no such appeal has been filed or (b) any appeal has been resolved by the highest court to which the order was appealed or from which reargument or rehearing was sought.
5. Deposit: Within 48 hours of all parties signing this Agreement Buyer shall deposit with Trustee Dillworth the sum of $5,000.00 which shall be credited against the Purchase Price at closing. It shall be non-refundable, except in the event that the Sellers breach this Agreement or there is a successful overbid pursuant to this Agreement as approved or modified by the Bankruptcy Court by a different party.
6. Closing Date: The Closing shall take place on the Effective Date or as soon as thereafter as agreed to by the Parties, but in no event shall the closing be more than 30 days from the Effective date.
7. Closing Costs: All expenses incurred by Sellers or Buyer with respect to the consummation of the transaction contemplated by this Agreement are to be borne and paid exclusively by the Party incurring same.
8. Deliveries by Sellers: At Closing, subject to satisfaction of the conditions set forth in this Agreement, Sellers shall deliver to Buyer the following documents (collectively, the "Closing Documents"): a Notice of Assignment or

6245261-3

similar document executed by the Sellers for the Claims on an as-is-where-is basis, with no warranties whatsoever, in the form attached hereto and any all non attorney privileged, non-work-product or otherwise privileged documents relating to the Claims.

9. <u>Buyer Representations</u>:
   a. <u>Execution Delivery and Performance</u>: This Agreement has been duly executed and delivered by Buyer and constitutes a valid and binding obligation of the Buyer and, subject to the approval of the Bankruptcy Court, is enforceable against the Buyer in accordance with its terms.
   b. <u>Buyer's Closing Funds</u>: On or before the Closing Date, Buyer shall have the necessary funds immediately available to consummate the transaction contemplated by this Agreement. There is no financing contingency with respect to Buyer's obligations in connection with this transaction.

10. <u>Disclaimer of Warranties; AS-IS and WHERE-IS Conveyance</u>: BUYER WARRANTS AND ACKNOWLEDGES TO AND AGREES WITH SELLERS THAT BUYER IS PURCHASING THE PURCHASED ASSETS IN AN "AS-IS AND WHERE-IS" CONDITION WITH ALL FAULTS AND SPECIFICALLY AND EXPRESSLY WITHOUT ANY WARRANTIES, REPRESENTATIONS OR GUARANTEES, EITHER EXPRESS OR IMPLIED, OF ANY KIND, NATURE OF OR ON BEHALF OF SELLERS. Without in any way limiting the generality of the foregoing, Buyer specifically acknowledges and agrees that Buyer hereby waives, releases and forever discharges any claim it has, might have in the future, had or may have against the Sellers and the Estates (collectively for this purposes "Sellers") and/or Sellers' agents with respect to the condition of the Purchased Assets, either patent or latent. Buyer does hereby release, and forever discharge Sellers, their employees, representatives, agents, sub-agents, successors, assigns and attorneys from any and all claims for damages and other causes of action at law or equity for injury, destruction, loss or damage of any kind or character, to the person or property of Buyer and Buyer's employees, agents and representatives arising out of or in any way relating to the Purchased Assets. **This section shall survive Closing.**

11. <u>Closing Conditions</u>:
    a. <u>Sellers' Conditions to Close</u>: Sellers' obligation to close the transactions contemplated hereby at the Closing shall be subject to the complete satisfaction and fulfillment of all of the following conditions precedent, any or all of which may be waived in whole or in part by Sellers (but no such waiver of any such condition precedent shall be or constitute a waiver of any covenant, promise, agreement, representation or warranty made by Buyer in this Agreement):
        i. All representations and warranties made by Buyer in this Agreement shall be complete and accurate at and as of the Closing on the Closing Date;
        ii. All covenants, promises and agreements made by Buyer in this Agreement and all other actions required to be performed or complied with by Buyer under this Agreement prior to or at

6245261-3

       the Closing shall have been fully performed or complied with by Buyer; and

    iii. Buyer shall deliver to Trustee Dillworth the Purchase Price in Good Funds as set forth in this Agreement.

b. <u>Buyer's Conditions to Close</u>: Buyer's obligation to close the transactions contemplated hereby at the Closing shall be subject to the complete satisfaction and fulfillment of all of the following conditions precedent, any or all of which may be waived in whole or in party by Buyer (but no such waiver of any such condition precedent shall be or constitute a waiver of any covenant, promise, agreement, representation or warranty made by Sellers in this Agreement):

    i. The sale of the Purchased Assets in an as is, where is sale. There are no representations or warranties; and

    ii. All covenants, promises and agreements made by Sellers in this Agreement and all other actions required to be performed or complied with by Sellers under this Agreement prior to or at the Closing shall have been fully performed or complied with by Sellers as applicable.

c. <u>Mutual Conditions to Close</u>: The obligations of both Buyer and Sellers to close the transactions contemplated hereby at the Closing shall be subject to the complete satisfaction and fulfillment of all of the following conditions precedent:

    i. All representations of Buyer and Sellers contained in this Agreement shall be true and correct in all material respects at and as of the Closing Date as though made at and as of that time.

    ii. The Bankruptcy Court shall have entered the Sale Approval Order as contemplated by and defined below and the Sale Approval Order shall be a Final Order.

12. <u>Bankruptcy Covenants</u>:

    a. <u>Entry of the Sale Approval Order</u>: Sellers promptly shall file a motion with the Bankruptcy Court seeking entry of an order approving this Agreement and the sale of the Purchased Assets under Bankruptcy Code Section 363 ("Sale Motion"). This Agreement shall become final upon entry of an Order(s) of the United States Bankruptcy Court authorizing the Trustees to enter into it and approving the terms set forth herein as provided in paragraph 4 above. Absent entry of such order, this Agreement shall be null and void.

    b. <u>Overbid Terms and Procedure</u>: Notwithstanding the provisions herein and subject to only Bankruptcy Court approval, the Trustees have sole discretion to accept a higher, better offer pursuant to Bankruptcy Code section 363, under the following terms and procedures ("Overbid Terms and Procedures"):

i. To overbid, an interested party must submit an offer ("Overbid") in writing to be received by the Trustees c/o his attorneys of record in the BK Cases at brich@bergersingerman.com and gfreedman@tabasfreedman.com, by no later than 5 days prior to the hearing on the Sale Motion. If the Trustees receive an offer, an auction will be held one (1) business day before the hearing on the Sale Motion.

ii. Each Overbid must be accompanied by a deposit in the form of Good Funds in the amount of $10,000.00 toward the Purchase Price and the initial overbid shall be in the amount of $35,000, with all overbids to be made in increments of $5,000 or other such amount as determined by the Trustee in his sole discretion.

iii. Any overbider must seek to acquire the Purchased Assets on terms and conditions not less favorable to the Estates than the terms and conditions in this Agreement under which the Buyer has agreed to purchase the inconsistent Lawsuit, including an all-cash consideration.

iv. If the Trustees receive an overbid as set forth above, the Trustees will seek (at the hearing on the Sale Motion) entry of an order, *inter alia*, authorizing and approving the sale of the Purchased Assets to whomever the Trustees, in the exercise of their business judgment, determine made the highest and best offer to purchase the Purchased Assets, consistent with the Overbid Terms and Procedures ("Successful Purchaser").

c. The Trustees shall use their best efforts to cause the Bankruptcy Court to enter the Sale Order(s) and approve the Overbid Terms and Procedures. The Trustees will request this be approved in the Sale Motion and believe that such terms are justified and appropriate. The Trustees do not warrant or guaranty that any of these provisions in the Sale Order(s) or Terms and Procedures will be approved by the Bankruptcy Court and Buyer's obligations under this Agreement are not excused by the fact that one or more of these provisions may be denied.

13. Default: In the event Buyer defaults on any provision of this Agreement, including the failure to timely pay the Purchase Price, the Trustees immediately may proceed to dispose of in anyway he sees fit of the Purchased Assets. The Buyer will also forfeit the Deposit to the Trustees.

14. Modification: No provision of this Agreement may be waived unless in writing signed by all of the Parties to this Agreement, and the waiver of any

6245261-3

one provision of this Agreement shall not be deemed to be a waiver of any other provision. This Agreement may be amended only by a written agreement executed by all of the Parties to this Agreement.

15. Dispute: ALL DISPUTES ARISING OUT OF OR RELATED IN ANY MANNER TO THIS AGREEMENT, OR TO THE ESTATES, INCLUDING, WITHOUT LIMITATION, ANY DISPUTE RELATING TO THE INTERPRETATION, MEANING OR EFFECT OF ANY PROVISION HEREOF, WILL BE RESOLVED IN THE BANKRUPTCY COURT AND THE PARTIES HERETO EACH SUBMIT TO THE EXCLUSIVE JURISDICTION OF THE BANKRUPTCY COURT FOR THE PURPOSES OF ADJUDICATING ANY SUCH DISPUTE, TO THE EXTENT THE JURISDICTION OF THE BANKRUPTCY COURT IS AVAILABLE.
16. Counterparts: This Agreement may be executed in any number of original, fax or copied counterparts, and all counterparts shall be considered together as one agreement. A faxed or copied counterpart shall have the same force and effect as an original signed counterpart. Each of the Parties hereby expressly forever waives any and all rights to raise the use of a fax machine to deliver a signature, or the fact that any signature or agreement or instrument was transmitted or communicated through the use of a fax machine, as a defense to the formation of a contract.
17. Severability: Whenever possible, each provision of this Agreement shall be interpreted in such a manner as to become effective and valid under applicable law, but if any provision of this Agreement shall be or become prohibited or invalid under applicable law, such provision shall be ineffective to the extent such prohibition or invalidity without invalidating the remainder of such provision or the remaining provisions of the Agreement.
18. Integration: This Agreement, including the attachments hereto, constitutes the entire understanding and agreement of the Parties hereto relating to the subject matter thereof and there are no other agreements or understandings, written or oral, in effect between the parties relating to such subject matter except as expressly referred to herein.
19. No third Party Rights: Nothing in the Agreement shall confer any rights upon any person or entity other than the parties hereto.

IN WITNESS WHEREOF, this Asset Purchase Agreement shall be deemed to have been executed as of the Effective Date,

JAWHBS LLC,
a Florida limited liability company

By: _____
Jerrold A. Wish, Esq., Manager

_____
Drew Dillworth, Trustee

_____
Joel Tabas, Trustee

6245261-3

# EXHIBIT "B"

137889-1

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re:

BEACON AT BRICKELL VILLAGE, LLC,                Chapter 7 Case
                                                Case No. 13-11961-LMI
      Debtor.
_____/

In re

BEACON DEVELOPER   PARTNERS, LLC,               Chapter 7 Case
                                                Case No. 13-23470-LMI
      Debtor.
_____/

**ORDER GRANTING TRUSTEES' JOINT MOTION FOR AUTHORITY TO SELL CERTAIN LITIGATION CLAIMS PURSUANT TO 11 U.S.C. § 363**

**THIS CAUSE** came before the Court for hearing on _____, on the *Trustees' Joint Motion for Authority to Sell Certain Litigation Claims Pursuant to 11 U.S.C. § 363* [ECF No. _____] (the "Motion"). The Court, having reviewed the Motion and the Court file, having found that notice of the Motion has been given, and having heard the presentation of counsel for the Trustees, finds it appropriate to grant the Motion. Accordingly, it is

5041670-1

**ORDERED** as follows:

1. The Motion is **GRANTED**.

2. The over bid procedures as noted in the Motion and the APA are approved.

3. The Trustees are authorized to the Sell the Property to the Buyer or its assignee pursuant to the terms of the APA free and clear of all liens, claims, and encumbrances.

# # #

Submitted by:
Brian G. Rich, Esq.
brich@bergersingerman.com
BERGER SINGERMAN LLP
125 S. Gadsden Street, Suite 300
Tallahassee, FL 32301
Tel. (850) 561-3010
Fax (850) 561-3013

*(Attorney Rich is directed to serve this Order to all parties of interest and to file a Certificate of Service.)*

```
Label Matrix for local noticing          Beacon Developer Partners LLC           Crystal Tower on Brickell Plaza, LLC
113C-1                                   2200 S Dixie Hwy                        999 Brickell Ave #PH-1102
Case 13-23470-LMI                        Miami, FL 33133-2300                    Miami, FL 33131-3012
Southern District of Florida
Miami
Fri Mar 27 14:21:52 EDT 2015

Miami-Dade County Tax Collector          Pasquale Renzi Family Trust             Renzo Renzi Family Trust
Attn: A.R. Gonzalez                      c/o Tomas A. Pila, Esq.                 c/o Tomas A. Pila, Esq.
140 West Flagler St.,Suite 1403          3191 Coral Way #401                     3191 Coral Way #401
Miami, Fl 33130-1561                     Miami, FL 33145-3220                    Miami, FL 33145-3220


SLS Properties Three, LLC                Watson Investigations, LLC              Jeffrey S. Berlowitz, Esq.
C/O David Lazarovic, Esq.                c/o Charles M. Tatelbaum, Esq           c/o Richard Layfield
P.O. Box 800454                          1 East Broward Blvd                     201 Alhambra Circle, 11th Floor
Miami, FL 33280-0454                     Suite 1010                              Coral Gables, FL 33134-5107
                                         Fort Lauderdale, FL 33301-1866


Miami-Dade County Tax Collector          Office of the US Trustee                Renzo Renzi
Attn: Bankruptcy Unit                    51 S.W. 1st Ave.                        c/o Peter Spindel, Esq
140 West Flagler Street, Suite 1407      Suite 1204                              P.O. Box 166245
Miami, Florida 33130-1561                Miami, FL 33130-1614                    Miami, FL 33116-6245


Richard Layfield                         Soneet Kapila Trustee for estate of Pasquale   Drew Dillworth
c/o Jeffrey S. Berlowitz, Esq.           c/o Segall Gordich P.A.                 c/o Brian Rich
201 Alhambra Circle, 11th Floor          801 Brickell Avenue                     125 S. Gadsden Street #300
Coral Gables, FL 33134-5107              Suite 900                               Tallahassee, Fl 32301-1589
                                         Miami, FL 33131-2979


Joel L Tabas                             John Crotty                             Nicole Feenane
14 NE 1 Ave PH                           Colliers International                  5821 SW 67 Avenue
Miami, FL 33132-2547                     95 Merrick Way #380                     Miami, FL 33143-1923
                                         Coral Gables, FL 33134-5310


Renzo Renzi                              Richard Layfield                        Sharon Christenbury, Trustee
170 SE 14 St.                            c/o Jeffrey S. Berlowitz, Esq.          c/o John B. Hutton, Esq.
Miami, FL 33131-3334                     Siegfried, Rivera, Hyman, et. al.       333 S.E. 2nd Avenue
                                         201 Alhambra Circle                     Suite 4400
                                         Eleventh Floor                          Miami, FL 33131-2184
                                         Coral Gables, Fl 33134-5107

Soneet Kapila
c/o Segall Gordich P.A.
Attn: Sundeep K. Mullick, Esq.
801 Brickell Avenue
Miami, FL 33131-2951




              The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.


(u)Jorge Arevalo                         (u)Miami                                (d)SLS Properties Three, LLC
                                                                                 C/O David Lazarovic, Esq.
                                                                                 P.O. Box 800454
                                                                                 Miami, FL 33280-0454
```

(u)Jerrold A. Wish          (u)Thomas A Bastian          End of Label Matrix
                                                         Mailable recipients    21
                                                         Bypassed recipients     5
                                                         Total                  26